UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA BEINHORN, | ) Case No. CV 05-0813-RC |
| Plaintiff, | ) |
| vs. | ) OPINION AND ORDER |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Plaintiff Gloria Beinhorn filed a complaint on February 2, 2005, seeking review of the Commissioner's decision denying her application for disability benefits. The Commissioner answered the complaint on July 8, 2005, and the parties filed a joint stipulation on August 30, 2005.

**BACKGROUND**

**I**

On November 14, 2002, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, claiming an inability to work since November 1, 1999, due to

fibromyalgia, carpal tunnel syndrome, overuse syndrome, nerve damage and fatigue.  Certified Administrative Record ("A.R.") 50-52, 58.  The plaintiff's application was initially denied on March 20, 2003, and was denied again on July 7, 2003, following reconsideration.  A.R. 38-41, 44-49.  The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Sally C. Reason ("the ALJ") on January 27, 2004.  A.R. 37, 269-90.  On March 3, 2004, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 12-23.  The plaintiff appealed this decision to the Appeals Council, which denied review on December 28, 2004.  A.R. 6-11.

**II**

The plaintiff, who was born on June 1, 1956, is currently 50 years old.  A.R. 50.  She has a high school education, has taken classes in data entry and receptionist skills, and has previously worked as a cashier, special order cook, and data entry operator.  A.R. 59, 64, 67-74, 272.[1]

On August 17, 2001, Richard Shaw, M.D., a rheumatologist, conducted an agreed medical examination[2] of plaintiff, reviewed her extensive medical history, and conducted diagnostic tests.  A.R. 119-54.  Dr. Shaw diagnosed plaintiff as having possible bilateral carpal

---

[1] Although plaintiff has significant physical and mental complaints, this opinion addresses only plaintiff's physical complaints.

[2] Under California worker's compensation law, an "agreed medical examiner [is] chosen by the parties because of his expertise and neutrality."  Power v. Workers' Comp. Appeals Bd., 179 Cal. App. 3d 775, 782, 224 Cal. Rptr. 758 (1986).

2

tunnel syndrome (left greater than right), mild degenerative disc disease in the cervical and lumbar spine, chronic exogenous obesity, and possible thoracic outlet syndrome, and noted she had, among other things, a history of fibromyalgia[3] and irritable bowel complaints and sleep disturbance consistent with upper quadrant myofascial pain. A.R. 130. Plethysmography[4] revealed a borderline increase in peripheral vascular resistance with systolic blood pressure consistent with obesity, fluid overload and a decrease in sympathetic tone. A.R. 129. Nerve conduction studies suggested possible bilateral carpal tunnel syndrome (left greater than right). Id. Dr. Shaw opined plaintiff had "an overuse syndrome" of her arms, but did not have any major evidence of cervical or lumbar disease. A.R. 148-52. Dr. Shaw noted plaintiff "clearly was examined by very competent rheumatolo-

//

//

---

[3] Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." Benecke v. Barnhart, 379 F.3d 587, 589-90 (9th Cir. 2004). "[F]ibromyalgia is diagnosed based on widespread pain with tenderness in at least eleven of eighteen sites known as trigger points." Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003); Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001).

[4] Plethysmography is "the recording of the changes in the size of a part, particularly as modified by the circulation of the blood in it." Dorland's Illustrated Medical Dictionary, 1402 (29th ed. 2000).

gists in the mid to late 1990s[5] who found evidence for a multiplicity of tender spots and chronology of events consistent with fibromyalgia"; however, since plaintiff has been unemployed since 1999, "she appears to have improved to the degree where . . . she displayed only positive tender spots above the waist and none below the waist[,] . . . [which] would indicate she was now more in the realm of a regional myofascial pain syndrome [rather] than a full blown fibromyalgia." A.R. 151. Dr. Shaw further noted "this is nothing more than a [difference in] degree and not pathology or any other different events." Id. Dr. Shaw opined that as of August 17, 2001, plaintiff was permanent and stationary, and she should avoid:

---

[5] For instance, Dr. Shaw reviewed medical records from Renee Z. Rinaldi, M.D., a rheumatologist, who performed a worker's compensation qualified medical examination of plaintiff on June 2, 1999, and diagnosed plaintiff with a work-related overuse injury of the arms and fibromyalgia versus myofascial pain syndrome due to overuse of her arms at work. A.R. 146; see also A.R. 103-04 (detailing Dr. Rinaldi's examination of plaintiff). Dr. Rinaldi suggested myofascial pain syndrome may be a more appropriate diagnosis than fibromyalgia because plaintiff's symptoms were confined to areas above the waist and, by definition, a patient with fibromyalgia has more widespread pain. A.R. 103. In any event, "myofascial pain syndrome is a disorder closely related to fibromyalgia[,]" Green-Younger v. Barnhart, 335 F.3d 99, 103 n.6 (2d Cir. 2003); Alexander v. Barnhart, 287 F. Supp. 2d 944, 965 (E.D. Wis. 2003), which "is diagnosed by 'identifying trigger points with palpation.'" Kolesar v. Shalala, 1994 WL 30544, *3, 15 n.9 (N.D. Ill.) (citation omitted). "[T]he distinction between fibromyalgia and myofascial pain syndrome is that fibromyalgia is a generalized pain syndrome characterized by symptoms of widespread pain, whereas myofascial pain syndrome is a similar syndrome in which pain and tenderness are localized to one or a few discrete areas. In other words, the distinction between myofascial pain syndrome and fibromyalgia is essentially one of degree rather than of kind." Seger v. Reliastar Life, 2005 WL 2249905, *15 (N.D. Fla.).

all work activities requiring repetitive use of her arms, hands, wrists, and fingers; repetitive or continuous work at or above shoulder level; work requiring her to sit in a "constantly head and neck bent forward position[,]" such as computer terminal work; stress in the work environment; work farther than 250-300 feet from appropriate bathroom facilities since she should have frequent bathroom breaks on an as-needed basis; climbing ladders, working at heights or operating dangerous equipment or automobiles; working without 5 minutes of rest for every 30 minutes worked; and working more than 20 hours a week.  A.R. 152-53.

On December 13, 2002, Allen I. Salick, M.D., a rheumatologist who had been treating plaintiff for fibromyalgia since February 13, 2000, opined plaintiff was permanent and stationary and "totally disabled and unable to compete in the open labor market" because of her fibromyalgia.  A.R. 253-57.  On June 23 and December 19, 2003, Dr. Salick reevaluated plaintiff and again diagnosed her as having fibromyalgia.  A.R. 241-43, 250-52.  On January 26, 2004, Dr. Salick opined plaintiff meets the American Rheumatological criteria for fibromyalgia, and has multiple tender points, chronic fatigue, frequent and severe headaches, anxiety, and depression, and she also has lateral epicondylitis and de Quervain's tenosynovitis.[6]  A.R. 258-61.  Dr. Salick found plaintiff has pain in both shoulders, knees, ankles and feet and in her right arm and hip, and her pain is caused

---

[6] de Quervain's tenosynovitis consists of "painful tenosynovitis [inflammation of a tendon sheath] due to relative narrowness of the common tendon sheath of the abductor pollicis longus and the extensor pollicis brevis."  Dorland's Illustrated Medical Dictionary at 514, 1798.

by weather changes, fatigue, movement/overuse, stress, cold, hormonal changes and/or being in a static position. A.R. 259. Dr. Salick opined plaintiff's condition is frequently severe enough to interfere with her ability to concentrate, and she is severely limited in her ability to deal with work-related stress. A.R. 259A. Dr. Salick further opined plaintiff: can sit, stand and/or walk for less than two hours in an 8-hour day; can walk approximately 1-3 blocks without rest and needs periods of walking during an 8-hour day; must be able to shift positions at will; must be able to take unscheduled breaks throughout the work day; can frequently lift and carry less than 10 pounds and can occasionally lift and carry 10 pounds; and has significant limitations in her ability to do repetitive, reaching, handling, or fingering. A.R. 259A-261. Finally, Dr. Salick concluded plaintiff is temporarily totally disabled due to her fibromyalgia. A.R. 261.

On January 31, 2003, Raymond Lee, M.D., an internist, examined plaintiff and diagnosed her as having, among other things, fibromyalgia (diagnosed in 1998) and a history of carpal tunnel syndrome. A.R. 188-92. Dr. Lee found no trigger points and that plaintiff's musculoskeletal examination was essentially unremarkable, showing no symptoms suggestive of carpal tunnel syndrome; thus, Dr. Lee opined plaintiff had no restrictions on her ability to work. A.R. 191.

//
//
//
//

6

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals

the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since November 1, 1999. (Step One). The ALJ then found plaintiff has "severe obesity, degenerative changes in the musculoskeletal system, myofascial pain, possible fibromyalgia and/or overuse syndrome" and "non-severe mental impairment(s)" (Step Two); however, she does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is able to perform her past relevant work; therefore, she is not disabled. (Step Four).

**IV**

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Here, the ALJ found plaintiff retains the RFC "for a full range of light

//

work."[7]  A.R. 23.  However, plaintiff contends the ALJ's finding is not supported by substantial evidence because the ALJ improperly rejected the opinions of her treating and examining physicians.  The plaintiff is correct.

The ALJ "must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician[,]" and "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record."  Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

Moreover, "the opinions of a specialist about medical issues related to his or her area of specialization are given more weight that the opinions of a nonspecialist."  Smolen, 80 F.3d at 1285; Benecke, 379 F.3d at 594 n.4.  "Rheumatology is the relevant specialty for fibromyalgia" and related conditions, and "[s]pecialized knowledge may be particularly important with respect to a disease such as

---

[7] Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b).  "[T]he full range of light work requires standing or walking for up to two-thirds of the workday."  Gallant v. Heckler, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984); SSR 83-10, 1983 WL 31251, *6.

fibromyalgia that is poorly understood within much of the medical community." Benecke, 379 F.3d at 594 n.4.

Here, plaintiff was previously diagnosed in the mid to late 1990s with fibromyalgia "by very competent rheumatologists." A.R. 151.[8] The plaintiff has not worked since 1999, and during that time, plaintiff's fibromyalgia had "improved" so that, by 2001, she had fewer "trigger points" and her condition was best described as "regional myofascial pain involving the upper shoulder girdle regions and upper extremities." Id. However, this change was, as Dr. Shaw emphasized, "nothing more than a [matter of] degree and not pathology or any other different events. . . ." Id. So that in 2001, Dr. Shaw found plaintiff had considerable work-place limitations, including that she should avoid all stress in the work-place, all work activities requiring repetitive use of her arms, hands, wrists, and fingers, repetitive or continuous work at or above shoulder level, she should avoid work requiring her to sit in a "constantly head and neck bent forward position[,]" such as computer terminal work, and she should be able to rest 5 minutes for every 30 minutes of work and not work more than 20 hours a week. A.R. 152-53.

The ALJ, however, rejected Dr. Shaw's opinions, finding they were

---

[8] Although the ALJ briefly mentioned Dr. Rinaldi's 1999 examination of plaintiff, A.R. 18, she made no attempt to obtain a copy of Dr. Rinaldi's report or to discuss the significance of Dr. Rinaldi's findings, as discussed in the opinion of Dr. Shaw and elsewhere. The same is true for the opinions of plaintiff's other treating and examining rheumatologists, whom Dr. Shaw discussed. See A.R. 103-09, 130-47. Nevertheless, for the reasons set forth herein, the Court need not discuss the significance of this failure.

10

merely premised on plaintiff's subjective complaints, which the ALJ "largely discount[ed]" since plaintiff could perform the daily activities of "crocheting, painting, shopping, household chores, etc." A.R. 18.  Although an ALJ may properly reject a physician's opinion that is clearly inconsistent with a claimant's daily activities, there is no clear inconsistency here.  To the contrary, there is absolutely no evidence in the record that plaintiff performs her household chores, shopping, and her various hobbies in a manner contrary to the limitations found by Dr. Shaw.  Cf. Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) ("[E]vidence that [claimant] could assist with some household chores was not determinative of disability.  'Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.'"  (citation omitted)). Moreover, as described in note 5 above, myofascial pain syndrome is a condition akin to fibromyalgia for which there are no objective tests; instead, diagnosis is made by identifying trigger points through palpation.  As such, "[t]he ALJ erred by effectively requir[ing] objective evidence for a disease that eludes such measurement[,]" and the ALJ did not provide specific and legitimate reasons for rejecting Dr. Shaw's opinions.[9]  Benecke, 379 F.3d at 594 (citation and internal quotation marks omitted); Green-Younger, 335 F.3d at 108.

**V**

This Court has discretion to award disability benefits to a

---

[9] Because the Court concludes the ALJ erroneously rejected the opinions of Dr. Shaw, it is unnecessary to address plaintiff's arguments regarding her other treating and examining physicians.

11

1  plaintiff when there is no need to remand the case for additional
2  factual findings. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th
3  Cir. 2002); Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).
4  Generally, the Court will direct the award of benefits in cases where
5  the record has been fully developed and where further administrative
6  proceedings would serve no useful purpose. McCartey, 298 F.3d at
7  1076-77; Vertigan v. Halter, 260 F.3d 1044, 1053 (9th Cir. 2001).

Where the ALJ "fails to provide adequate reasons for rejecting the opinion of a[n] . . . examining physician, [this Court] credit[s] that opinion 'as a matter of law.'" Lester, 81 F.3d at 834 (citations omitted); Benecke, 379 F.3d at 594. At the administrative hearing, vocational expert Gregory Jones testified that an individual with the limitations Dr. Shaw found for plaintiff would not be able to perform any substantial gainful activity. A.R. 285-87. Therefore, properly crediting Dr. Shaw's opinions, plaintiff is entitled to disability benefits.[10] Benecke, 379 F.3d at 595; Lewis v. Apfel, 236 F.3d 503, 518 (9th Cir. 2001).

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the Commissioner shall award benefits to the plaintiff under Title II of the Social Security Act, 42 U.S.C. § 423, and Judgment shall be entered accordingly.

DATE:  August 17, 2006                    /s/ Rosalyn M. Chapman
                                          ROSALYN M. CHAPMAN
                                          UNITED STATES MAGISTRATE JUDGE

---

[10] Having reached this conclusion, it is unnecessary to address the other issues plaintiff raises.

R&R-MDO\05-0813.MDO - 8/16/06